FLORIDA CENT. & P. R. CO. v. BUCKI et al.

(Circuit Court of Appeals, Fifth Circuit. June 25, 1895.)

No. 375.

1. PRACTICE—ASSIGNMENTS OF ERROR.
    An assignment of errors made up by basing a separate assignment upon every exception taken during the trial, on which exception was taken to every ruling of the judge, is equivalent to a general assignment of errors, within rule 11 of the circuit courts of appeals. 11 C. C. A. cii., 47 Fed. vi.

2. EVIDENCE—BOOKS OF ACCOUNT.
    For the purpose of showing the amount of merchandise shipped by a manufacturer over a railroad, testimony of persons is admissible which is based on a record made by them at the time from weekly reports of the railroad company, and then known to be correct, the original weekly reports having been destroyed by fire, and the best evidence of the shipments being in the hands of the railroad company, the adverse party.

3. DAMAGES—REMOTENESS.
    In an action against a railroad company for charging excessive rates of freight in violation of an alleged contract to carry lumber at specified rates during the life of certain forests owned by the plaintiff, damage claimed to have arisen from the inability, in consequence of such excessive rates, to use the lumber contained in uncut forests, is too remote.

In Error to the Circuit Court of the United States for the Southern District of Florida.

This was an action by Louis Bucki & Son against the Florida Central & Peninsular Railroad Company for damages for breach

of a contract. Judgment was rendered in the circuit court for the plaintiffs. Defendant brings error. Reversed.

John C. Cooper, John A. Henderson, and George P. Raney, for plaintiff in error.

H. Bisbee and C. D. Rinehart, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

McCORMICK, Circuit Judge. L. Bucki & Son, the defendants in error, brought this action against the Florida Central & Peninsular Railroad Company, the plaintiff in error, claiming damages for the breach of a written contract made by the plaintiffs below with H. R. Duval, receiver of the Florida Railway & Navigation Company, which contract is in these words:

"This agreement, between the receiver of the Florida Railway & Navigation Company, party of the first part, and Louis Bucki & Son, party of the second part, both parties transacting business in the state of Florida, witnesseth that the party of the second part operates a lumber mill at Ellaville on the railroad operated by the party of the first part; that, by reason of the consumption of the greater part of the forests near Ellaville, it is necessary for the party of the second part to draw its material supply from tracts of forests which it owns east, northeast, and southeast of Ellaville, and for that purpose it requires railroad transportation between the said forests and said mill; and, as the construction of such railroad involves an expense of about fifty thousand dollars to the party of the second part, and it being to the interest of both parties that the operation of said mill be continued and enlarged: Now, therefore, for this and other valuable considerations, the party of the second part agrees to construct a railroad adapted to the transportation of logs from some point or points on the line of the railroad of the party of the first part, either north or south, or both, of said point or points, to be selected by both parties, and to be within a distance of not over five miles east of Ellaville, running from the line of the said railroad of the party of the first part into the forests of said party of the second part, which said log railroad said party of the second part agrees to construct, equip, operate, and maintain and connect with the railroad of the party of the first part at the expense of the party of the second part, for the purpose of transporting its logs over the railroad of the party of the first part to Ellaville, in such quantities as said mill may require; and it is further agreed that said railroad, to be constructed as above, and the portion of the track of the party of the first part which is hereby rented to the party of the second part, shall be operated by the party of the second part, under and in conformity with such rules and regulations as may be prescribed by the party of the first part, or its agents, from time to time. The party of the second part shall pay to the party of the first part a rental for the use of its railroad between Ellaville and the point of said connection, the sum of four hundred dollars per annum, per mile, during the continuance of this contract, said rental to begin when the connection with the railroad of the party of the first part is made, payment to be made monthly. The party of the first part further agrees to provide at all times, to the extent of its ability, the necessary cars and engines to transport the product of said mill of the party of the second part to Jacksonville, Fernandina, or such other points as said party of the second part may consign, with all practicable dispatch. It is further agreed that, in consideration of the large expense which the party of the second part must incur in the construction and operation of its railroad, and the advantage of said railroad as a means of supplying product for profitable transportation by said party of the first part, that the rates of freight to be charged by said party of the first part to Jacksonville and Fernandina shall at no time during the continuance of this agreement be increased over the present rates charged

in greater amount than the percentage of increase on the present market value of the product of said mill of the party of the second part, said present rate of freight and present market value of said mill product to be stated in writing and annexed to this agreement, said price of lumber to be based upon the New York market at the date of this agreement; and that the rates of freight to be charged by the party of the first part from Ellaville to all local stations or other points than those specifically named above shall be local rates of the party of the first part, or such other rates as he may deem proper, and that the party of the second part shall pay to the party of the first part for any damage to track, bridges, etc., which may be caused by said party of the second part, except ordinary wear and tear; and that this agreement shall take effect upon the date of its execution, and continue in effect thereafter during the life of said forests.

"[Signed]       L. Bucki & Son.
"[Seal.]       H. R. Duval,
           "Receiver.Florida Railway & Navigation Co.·

"January 15, 1887.
"Attest: E. R. Hoadley, Sec'y."

The declaration averred that the defendant, having become the owner of the railroads and other properties represented by the receiver when the contract was made, adopted, ratified, and confirmed it, and faithfully kept and performed its covenants and agreements for a long period after it became the owner of the railroad. That, on and continuously ·after the 1st of September, 1889, the defendant refused to keep and perform these covenants adopted by it, and in violation of them exacted of plaintiff largely excessive charges of freight on all of plaintiff's shipments from 1st September, 1889, till the early part of May, 1893, to plaintiff's damage $40,000. The other counts it is not necessary to notice. By a complication of demurrers, pleas, and replications customary under the practice in Florida, the issues were reached, and the plaintiff offered testimony by which it intended to show that the defendant had adopted the contract made by the receiver, and also introduced proof tending to show the amount of lumber shipped from 1st of September, 1889, to May, 1893, on which defendant exacted freight at the rate of $21 a car load of 35,000 pounds. The plaintiff also offered, and, over the objection of defendant, introduced, testimony tending to show the amount in feet of sawed lumber of the uncut lumber trees in the forests of plaintiff, which he claims he was prevented using by the defendant's alleged breach of the contract. There was a verdict for plaintiff in damages to the amount of $29,626.49, and judgment thereon, to reverse which this writ of error is prosecuted. The defendant in error has moved to strike out the assignment of errors, for failure to comply with rule 11 of this court. 11 C. C. A. cii., 47 Fed. vi. On the face of the assignment it is obvious that it is framed with a studious effort to conform to the letter of the rule, and therefore the motion will be refused, but the assignment is obnoxious to the criticism suggested in the motion. It is familiar law on this subject that a general assignment of error should be disregarded, because it does not advise the adversary as to what he is to defend and unduly taxes the time and effort of the reviewing tribunal. On this view rule 11 is founded and applied. Now, a general assignment is but the sum of all the possible particular assignments which the record could support. It is manifest, there-

fore, that if the party cast in the trial court multiplies his exceptions to cover all the action of that court, and makes each exception taken the basis of a special assignment of error, the result and effect is equivalent to a general assignment. Such unwinnowed assignments are hurtful to the interest of parties, to the credit of counsel, and to the dignity of the appellate court. In this case only 44 separately numbered errors are assigned. The forty-fourth, being the sum of all the others, is in these words: "The court erred in entering judgment for plaintiffs in said cause against defendant." The diligence and zeal of counsel were not equal to the work of taking up and urging these 43 separately assigned errors one by one in succession. At one point in the printed brief of their argument they group Nos. 16 to 26. We will pursue the lead of this wholesome forbearance on the part of counsel somewhat further than they have gone. The averment as to the adoption of the contract is sufficient, when established by proof, to charge the defendant for excessive exactions of freight on shipments made. Whether the contract was binding on the receiver or not is immaterial. Chicago & A. R. Co. v. Chicago, V. & W. Coal Co., 79 Ill. 121; Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876; Wiggins Ferry Co. v. Ohio & M. Ry. Co., 142 U. S. 396, 12 Sup. Ct. 188. We have said the plaintiff offered testimony by which it intended to show that the defendant had adopted this contract. We have the gravest doubt whether any of the testimony offered, or all of it put together, tends to show the alleged adoption. Much of it, as we view it, tends to show the contrary. The objections to the introduction of the testimony of James Veit and W. M. Christman were rightly overruled. The absence of better evidence was accounted for by the plaintiff. The best evidence was in the hands of the defendant. The entries made by the witnesses in the books of the plaintiff show the result of the witnesses' personal examination of the weekly reports made by the defendant of the shipments of lumber. These reports having been destroyed by fire, the plaintiff had the right to prove the contents by the witnesses who had examined them at the time they were rendered, and had recorded the result of that examination, basing their testimony on that record, and its verity on their knowledge that it was correctly made by them at the time of the transaction. The objection to the testimony of the witness Louis J. Brush and of other witnesses to the extent of the uncut forest was well taken, and should have been sustained. and for the error in admitting this testimony, and the consequent errors in the charges of the court and in the refusal of charges requested by the defendant, the case must be reversed; and, as we do not know that the plaintiff will not be able, on another trial, to make proof of its averment as to the adoption of the contract by the defendant, the cause will be remanded for a new trial. There is nothing in the nature and terms of the contract declared on engaging to pay, or clearly implying an obligation to pay, any such damage as those claimed on this uncut forest. If the plaintiff can lay and prove these damages so as to avoid the objection of remoteness and uncertainty. it is clear to us they have not been so laid in the declaration, and

no proof has been . offered tending to support such averments, if such had been made. These objections must be avoided, and proof aliunde the contract made, to raise such an implied liability, and the special damage must be shown before the plaintiff can recover on account of its uncut forest. Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500. The judgment of the circuit court is reversed, and case remanded to the circuit court, with directions to award the defendant a new trial. Reversed and remanded.