CENTRAL TRUST CO. OF NEW YORK et al. v. CLARK.

(Circuit Court of Appeals, Eighth Circuit. February 20, 1899.)

No. 1,147.

1. BREACH OF CONTRACT—LOST PROFITS AS DAMAGES.

The recovery of lost profits, as damages for the breach of a contract, is governed by the same rules as the recovery of other damages.

2. SAME—DAMAGES REASONABLY ANTICIPATED.

Those damages which are the natural and probable result of a breach of a contract, those which the parties may reasonably anticipate as the effect of the breach under the particular circumstances of the case which are known to them when the contract is made, and those only, may be recovered in action upon a contract.

3. SAME—KNOWLEDGE OF DEFAULTING PARTY.

In the absence of proof aliunde of knowledge by the defaulting party, at the time the contract is made, of special circumstances which make other damages the natural and probable effect of a breach, such damages only as are implied by the contract itself, such as would naturally flow from its breach in the usual course of things, such as would reasonably

be anticipated by the parties to such contracts in the great multitude of such cases, and such damages only, may be recovered.

**4. SAME.**

Proof of knowledge by the defaulting party, at the time he makes the contract, of special circumstances which make damages other than those implied by the contract, and naturally flowing from it, the natural and probable effect of its breach, will warrant the recovery thereof.

**5. SAME—SPECULATIVE DAMAGES.**

Damages which are the natural and probable result of a breach of a contract, and which may be reasonably anticipated therefrom, but which are so speculative and so dependent upon numerous and changing contingencies that their amount is not susceptible of proof with any reasonable degree of certainty, may not be recovered.

**6. SAME.**

Plaintiff's assignor contracted to deliver a gear wheel and pinion to a street-railway company on January 3, 1893, but failed to deliver it until May 14, 1893. The wheel and pinion were purchased to replace worn and broken machinery, and because of the delay the company was able to operate its road at only three-fourths its normal capacity, and sustained a loss of $181 per day during such time. *Held*, that in the absence of proof that plaintiff's assignor had knowledge, at or before the making of the contract, that the wheel and pinion were wanted to replace old machinery, which was liable to break, and thereby prevent the regular operation of the road, the loss sustained from the delay could not have been within the contemplation of the parties, or reasonably anticipated, when the contract was made; was not the natural and probable effect of the delay; and was too remote and inconsequential to be recovered.

Appeal from the Circuit Court of the United States for the District of Colorado.

William W. Field (Edward O. Wolcott and Joel F. Vaile, on the brief), for appellants.

Charles H. Toll and D. V. Burns (C. W. Bangs, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This case involves the right of the intervener and appellee, Walter L. Clark, to payment for the purchase price of a gear wheel and pinion which was sold by his assignor, the Midvale Steel Company, to the Denver City Cable-Railway Company in 1892, out of the property of the latter company, notwithstanding a prior mortgage upon it, represented by the Central Trust Company, as trustee for the bondholders secured thereby. Clark intervened in the foreclosure suit brought by the trust company against the railway company, and insisted that his claim was entitled to a preference in payment over the bonds secured by the mortgage. The trust company contested this claim for a preference, and also pleaded that the Midvale Steel Company, by its delay in delivering the gear wheel and pinion, had inflicted damages upon the cable company in excess of the purchase price of the machinery. The circuit court sustained the position of the intervener, and refused to hear the claim of the trust company to offset the damages caused to the cable company by the steel company's delay against the amount owing for the purchase price of the machinery. Upon an appeal from a decree based upon that ruling, this court decided that the claim of Clark was a preferential debt, but that the trust

company was entitled to a reduction of the claim of the appellee by the amount of any damages caused to the cable company by the failure of the steel company to perform the contract in the stipulated time, and remanded the case to the trial court, with directions to cause an investigation of this question to be made, and to deduct from the amount of the intervener's claim such damages as the cable company sustained on account of the failure of the steel company to deliver the gear wheel and pinion within the contract period. Trust Co. v. Clark, 26 C. C. A. 397, 81 Fed. 269, 273, and 49 U. S. App. 453. Thereupon the circuit court tried this question before a jury, instructed them that no damages were proved, that they must return a verdict against Clark for only $1, and entered a decree accordingly. The trust company, the Denver City Cable-Railway Company, the Denver City Railroad Company, which was the ultimate purchaser of the railroad at the foreclosure sale, and Edward C. Baggs, the receiver of this purchaser, have appealed from the decree. They have made various assignments of error, but the answer to one question effectually disposes of them all. That question is: Did appellants produce, or offer to produce, upon the trial, such evidence as would have entitled the cable company to substantial damages from the steel company on account of its delay in delivering the wheel and pinion in an original action between the cable company and the steel company? If this question is answered in the negative, there was no substantial error in the trial below, and, if in the affirmative, the case must be retried. We proceed to its consideration.

The appellants proved these facts: The cable company was a corporation operating a cable railway in the city of Denver, in the state of Colorado, and the steel company was a corporation engaged in manufacturing machinery in or near the city of Philadelphia, in the state of Pennsylvania. By means of telegrams and letters sent to each other between September 1, 1892, and October 4, 1892, these parties made a contract on October 3, 1892, to the effect that the steel company would make and deliver to the cable company a gear wheel and pinion suitable to operate its railway on January 3, 1893, in consideration of a stipulated price to be paid for it by the cable company. The delivery was not made until May 14, 1893. There was no provision in the contract that time was of its essence, and there was nothing in the correspondence which led to the contract to indicate that haste was required, or that delay would probably cause unusual loss. On January 3, 1893, and from that time until May 14, 1893, the old gears which the cable company was using were cracked and patched, so that its engineers considered it unsafe to move its cars at a greater speed than seven miles an hour, although their normal speed was ten miles an hour. During this time these gears were in such a worn and weak condition that occasional breakages and stoppages occurred, and the reduction of speed increased the spaces between the cars 25 per cent. After this evidence had been introduced, the appellants offered to prove that early in December, 1892, these old gear wheels, to replace which the contract in question was made, entirely broke down; that thereafter the condi-

tion of the machinery was such as to require a reduction of the speed of the cars until the new machinery was delivered; that at several times between the first breakdown, in December, and May 14, 1893, the old machinery collapsed; that the steel company was at all times constantly advised of all these matters; that between January 3, 1893, and May 14, 1893, the earnings of the road fell off between $22,000 and $25,000, as compared with its earnings in 1891 and 1892, while all the conditions except the diminished speed and the greater spaces between the cars were the same as in those years; that it was impracticable to operate the road at this diminished speed with the normal spaces between the cars, and that on account of the reduced speed at which the cable company was compelled to operate its road by reason of the failure of the steel company to deliver the gear wheel and pinion as agreed the mileage of the cable company was so reduced that it lost $33,000. The appellee objected to this testimony on the grounds (1) that the intervener was not liable under the contract for the damages which the appellant sought to prove, under any circumstances; and (2) that these damages were remote, speculative, dependent upon a great many contingencies, and related solely to the question of profits. The court sustained these objections, and directed a verdict for nominal damages.

In the arguments and briefs in this case our attention is sharply and repeatedly called to the fact that the damages sought consist entirely of losses of anticipated profits. The mere fact, however, that damages claimed as a result of the breach of a contract consist of anticipated profits, neither establishes the right nor bars the claim to their recovery. Some profits may be and others may not be allowed. The rules which govern their recovery do not differ materially from those which measure the recovery of expenses incurred or other losses sustained through the breach of an agreement. One who breaks a contract of sale of merchandise is liable in damages for the difference between the contract price and the market value of the goods at the time and place of delivery, although this difference is in fact nothing but the profit which the purchaser would have made if the contract had been performed, and which he necessarily lost by its breach. One who prevents his contractor from performing his agreement is liable in damages for the profits which he would have made if he had performed it, because such profits are the direct and immediate fruits of the contract which the parties necessarily contemplated, and in fact promised, when the agreement was made. Masterton v. Mayor, etc., of Brooklyn, 7 Hill, 61, 69; Railroad Co. v. Howard, 13 How. 307, 344; U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. 81; Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876. On the other hand, it was held in the leading case of Hadley v. Baxendale, 9 Exch. 341, 354, 356, that one who delivered a broken shaft to a common carrier to take to a manufacturer as a model for a new one, and who at the same time notified the carrier that his mill was stopped on account of the break, and asked him to forward the shaft immediately, could not recover from the carrier what he would have gained by running his mill during the latter's unreasonable delay. In Howard v. Manufacturing Co., 139 U. S. 199, 206, 11 Sup. Ct. 500,

the manufacturing company brought an action for a balance due to it upon a contract it had made to reconstruct a mill, to place in it all machinery and material necessary to erect and complete a flour mill of 200 barrels capacity in 24 hours, and to have the mill completed and ready to run on or before July 15, 1885. The defendant answered, among other things, that the mill was not completed until 60 days after July 15, 1885, and that he thereby lost a profit of $1 per barrel on 1,200 barrels of flour which he would have manufactured in his mill if it had been completed according to the agreement, but the supreme court refused to permit him to recoup these profits. Profits of this character may not be recovered for two reasons: In the first place, parties ought not to be held to pay, for breaches of their contracts, damages which they cannot reasonably anticipate, and which they do not contemplate when they make the contracts, because the presumption is that the contracts would not have been made if such damages had been foreseen or anticipated. In the next place, profits of this character are generally so uncertain, and dependent upon so many unforeseen and changing contingencies, that no reasonable basis for the estimate of their amount can be established. An examination of the opinions in the cases to which we have adverted will conclusively show that the fact that the damages sought in an action on a contract consist of lost profits has little tendency to determine the question whether or not they may be allowed, and that we must recur to the established rules for the measure of damages in general for a correct decision of that question. From the considerations which move the reason, and from the American and English authorities upon this subject, the following general rules may be deduced, which are equally applicable to the measurement of damages based upon the loss of profits and to the measurement of damages founded upon other losses:

(1) Those damages which are the natural and probable result of a breach of a contract, those which the parties may reasonably anticipate as the effect of the breach under the particular circumstances of the case which are known to them when the contract is made, and those only, may be recovered in action upon a contract. Rockefeller v. Merritt, 22 C. C. A. 608, 617, 76 Fed. 909, 918, and 40 U. S. App. 666, 680, and cases there cited.

(2) In the absence of proof aliunde of knowledge by the defaulting party at the time the contract is made of special circumstances which make other damages the natural and probable effect of a breach, such damages only as are implied by the contract itself, such as would naturally flow from its breach in the usual course of things, such as would reasonably be anticipated by the parties to such contracts in the great multitude of such cases, and such damages only, may be recovered. Drug Co. v. Byrd, 92 Fed. 290; Railroad Co. v. Bucki, 16 C. C. A. 42, 46, 68 Fed. 864, 868, and 30 U. S. App. 454, 460; Hadley v. Baxendale, 9 Exch. 341, 354, 356; Primrose v. Telegraph Co., 154 U. S. 1, 29, 14 Sup. Ct. 1098; The Ceres, 19 C. C. A. 243, 72 Fed. 936, 943; Boyd v. Brown, 17 Pick. 453, 461; Ingledew v. Railroad, 7 Gray, 86, 91; Railway Co. v. Mudford (Ark.) 3 S. W. 814, 816; Kempner v. Cohn, 47 Ark. 519, 527, 1 S. W. 869.

(3) Proof of knowledge by the defaulting party, at the time he makes the contract, of special circumstances which make damages other than those implied by the contract, and naturally flowing from it, the natural and probable effect of its breach, will warrant the recovery thereof. Boutin v. Rudd, 27 C. C. A. 526, 82 Fed. 685.

(4) Damages which are the natural and probable result of a breach of a contract, and which may be reasonably anticipated therefrom, but which are so speculative and so dependent upon numerous and changing contingencies that their amount is not susceptible of proof with any reasonable degree of certainty, may not be recovered. Howard v. Manufacturing Co., 139 U. S. 199, 205–210, 11 Sup. Ct. 500, and cases there cited; Cahn v. Telegraph Co., 46 Fed. 40.

The application of these rules to the facts of the case in hand readily answers the question it presents. The contract of the steel company was to deliver a gear wheel and pinion within three months of October 3, 1892. The damages to the cable company, with which the appellants seek to reduce the claim for the purchase price of this machinery, consist of the loss of income entailed upon the cable company during the delay in the delivery of the wheel and pinion after January 3, 1893, by the fact that the machinery to replace which they were ordered broke down early in December, 1892, and was thereafter so badly cracked and worn that it was insufficient to operate the cable at more than three-fourths of its normal speed. The purchase price of this machinery was $10,500. The lowest estimate of the cable company's loss by the delay of four months and a half in its delivery is $22,000, or at the rate of about $181 per day. No knowledge by or notice to the steel company at or before it made this contract that this gear wheel and pinion were ordered to replace old machinery, or that the old machinery was badly worn or weak, or liable to break or to be insufficient to operate the railroad at its normal speed, or that the income of the cable company was liable to be reduced $181 per day, or at all, by its failure to complete its contract on January 3, 1893, was either proved or offered to be proved at the trial of this case. The contract, therefore, falls under the second rule we have announced, and the only damages recoverable for its breach are those implied by the contract itself, those which are the natural and probable effect of the breach in the usual course of affairs. In Hadley v. Baxendale, 9 Exch. 341, the loss of the profits of the mill during the carrier's unreasonable delay in taking the broken shaft to a manufacturer was held to be too remote and inconsequential to authorize a recovery, although the carrier knew, when he received the shaft, that the mill had stopped because it was broken. In Howard v. Manufacturing Co. the anticipated profits from operating a mill during the delay in the completion of a contract to reconstruct and furnish the machinery for it, and to have it finished and ready to operate on July 15, 1885, were held to be such as did not naturally flow from a breach of the contract, such as could not reasonably have been anticipated by the parties when they made it, and their allowance was refused. How, then, can it be said that a manufacturing company, which simply agrees to make a wheel and pinion for a railway company within a certain time, and

which has no notice or knowledge, when it makes the contract, that the time of its fulfillment is material, no notice or knowledge that it has been ordered to replace old machinery, no knowledge or notice that such old machinery is worn, weak, or liable to break, or that thereby the income of the railway company is liable to be decreased by its delay,—how can it be said that such a manufacturing company could anticipate the loss of the income of a railway company as the result of a delay in the fulfillment of its contract, or that such a loss flows naturally from the breach? The question is its own answer. The loss of a part of the profits of a railroad company or of a manufacturing company is not the natural or probable effect of a delay in filling a contract with it to furnish machinery suitable to operate its railroad or manufactory, because it would not ordinarily follow such a delay; it would not be as likely to follow it as it would to fail to follow it, and it would not be contemplated by the parties when the contract was made. Our conclusion is that the loss of the income of the cable company from the delay in the fulfillment of the contract to furnish it a gear wheel and pinion could not have been in the contemplation of the parties, and could not have been reasonably anticipated by them, when the contract was made; was not the natural and probable effect of the breach; and was too remote and inconsequential to form a basis for its allowance.

The conclusion already reached renders it unnecessary for us to consider the objection that the damages which the appellants sought to prove are so speculative and contingent in their nature that they may not form the basis for a recovery.

The objections of the appellee to the consideration of this case on the merits have not been considered, because the result we have reached is the same we should have attained if these objections had been considered and sustained. The decree below must be affirmed, and it is so ordered.