### KELLY et al. v. FAHRNEY.

(Circuit Court of Appeals, Eighth Circuit. October 16, 1899.)

No. 1,203.

**1. CONTRACT—PARTIES—RIGHT TO ENFORCE.**
A contract to lend money to a corporation, made with stockholders who furnished the consideration, *held* to be a contract with them individually, for the breach of which they were entitled to sue.

**2. APPEAL—REVERSAL—RIGHT TO NOMINAL DAMAGES.**
When no substantial right is involved, a judgment against a plaintiff will not be reversed when it appears from the statement of his cause of action that, at most, he is only entitled to recover nominal damages.

**3. DAMAGES—BREACH OF CONTRACT TO LOAN MONEY.**
No substantial damages are recoverable for the breach of an executory agreement to loan money, where no definite time for the continuance of the loan is agreed on, since the law implies an agreement to repay it on demand.

**4. SAME—REMOTENESS.**

To render losses sustained by one party to a contract as a result of its breach by the other recoverable as damages for the breach, where they were not its direct and natural consequences, by reason of special circumstances known to both parties when the contract was made, they must be such as, in view of such circumstances, could have been foreseen and estimated with reasonable certainty; and a party who failed to comply with a contract with stockholders to lend money to a corporation cannot be held to have contemplated that such stockholders would give stock owned by them individually to another person as a bonus to procure the loan, or held liable for the value of stock so given as damages for the breach of his contract.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

This case was tried below on demurrer to an amended complaint, the action being a suit at law upon a contract. The demurrer was sustained; whereupon the plaintiffs declined to plead further, and a final judgment was rendered in favor of the defendant.

The complaint recited, in substance, that the White Cliffs Portland Cement & Chalk Company was an Arkansas corporation, with a capital stock of $1,000,000; that William J. Kelly and John Kelly, the plaintiffs below and the plaintiffs in error here, were, respectively, the president and secretary of said company, the active managers of its affairs, and the owners of a controlling interest in its capital stock; that Ezra C. Fahrney, the defendant below and the defendant in error here, was also a large stockholder in said company; that on or about December 10, 1896, said company was in great need of money to complete its plant and run its business successfully; that prior to said date said company had issued bonds secured by a mortgage on its property to the amount of $120,000, and had sold 80 bonds, of the denomination of $1,000 each, and had hypothecated 25 bonds, amounting to $25,000, to secure a loan in the sum of $20,000, and that it held the remainder of said bonds, amounting to $20,000, subject to such future disposition thereof as it might see fit to make. It was then averred as follows: "That thereupon, on the said day, in the city of Chicago, in the state of Illinois, the plaintiffs and the defendant entered into an agreement and contract whereby it was agreed that the plaintiffs should give and assign to the defendant $25,000, at its face value, of that part of the capital stock of said corporation then owned and held by the said plaintiffs, in consideration of which defendant then and there agreed and undertook to and with the plaintiffs that he would take and pay for the said $20,000 of bonds remaining of said corporation, and as soon thereafter as the said corporation should give out of money, and require more, that he, the said defendant, would loan and pay into the company on its note the sum of $75,000 for its purposes, and it was further agreed, as a part of said contract, that, when the money should be so needed by said corporation, the said William J. Kelly, then president of said corporation, should come to the city of Chicago, and carry out the terms of said contract; that thereupon, in pursuance of said agreement, the plaintiffs then and there assigned and gave to the defendant the said $25,000, at its face value, of said capital stock of said corporation, and said defendant took and paid for the said $20,000 of said company's bonds; that said corporation having in all things authorized the said William J. Kelly, the president thereof, to negotiate said loan for and in behalf of said corporation, and the said William J. Kelly being then fully authorized and empowered by a resolution of the board of directors of said corporation as in said agreement provided, and after said agreement had been made, to wit, on the 1st day of March, 1897, the said corporation did then give out of money, and required more to conduct its business and finish its plant, as aforesaid, and said William J. Kelly went to the city of Chicago, as agreed, for the purpose of carrying out said agreement, and offered to carry out the agreement, and was by the said defendant then and there informed that he, the said defendant, would not carry out or keep his contract as agreed in that regard, but would refuse to do so." It was next averred, in substance, that because the aforesaid company was involved in debt, and owed certain debts

for labor which were liens upon its property, it could not borrow more money except by assigning a part of its stock to some person as a bonus to induce a loan, which fact had been discussed by the plaintiffs and the defendant, and was well known to the latter; that a greater part of the corporate indebtedness was due to the defendant and his father, which consisted of bonds secured by the aforesaid mortgage, the whole of which mortgage indebtedness could be declared due if the interest thereon was not promptly paid; that the defendant and his father, immediately after the former had declined to make the aforesaid loan, as he had agreed to do, began pressing for payment of the indebtedness which they then held, and that, to prevent a foreclosure of the aforesaid mortgage on the company's property, the plaintiffs were compelled to and did negotiate a loan to the company in the sum of $50,000, and in doing so were forced to give up and assign $300,000 worth of their stock in said company to the creditor to induce the loan. It was next averred that the stock so assigned as a bonus was worth $300,000, and that by the breach of the aforesaid contract the plaintiffs were damaged to that amount. The complaint contained a second count, which was substantially the same as the first, except that it charged that the defendant resorted to various artifices to prevent the plaintiffs from obtaining a loan elsewhere after the defendant had refused to advance $75,000 according to his agreement, and that this was done to compel the plaintiffs to give up more of their stock than they had originally agreed to do, and to thereby enable the defendant to secure a controlling interest in the corporation.

Ernest Dale Owen (Oscar D. Scott and Paul Jones, on the brief), for plaintiffs in error.

U. M. Rose (W. E. Hemingway and G. B. Rose, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended in behalf of the defendant below, the defendant in error here, that the demurrer to the complaint was properly sustained because the contract declared upon was a contract between the defendant and the White Cliffs Portland Cement & Chalk Company, hereafter termed the "White Cliffs Company," and that no such privity exists between the plaintiffs and said company as will enable them to sue on an agreement made by it. This contention, however, cannot be sustained. A fair construction of the complaint leads inevitably to the conclusion that the agreement described in the complaint was one between the defendant and the plaintiffs, the latter acting individually, and not merely as officers of the corporation. The consideration for the alleged promise by the defendant to take the bonds of the corporation to the amount of $20,000, and to pay for the same, and also to loan to the White Cliffs Company on its note $75,000 when its funds should give out, moved entirely from the plaintiffs, acting in an individual capacity, and consisted of an assignment to the defendant of stock in said company to the amount of $25,000, which they then owned. The fact that the consideration for the promise moved from the plaintiffs, and that the promise was made to them, compels us to regard the agreement as one that was made with the plaintiffs in an individual capacity, for the breach of which they are entitled to sue.

It is next insisted that the damages claimed are too remote and speculative to be recovered, and that, even if nominal damages might

have been allowed, nevertheless the judgment below ought not to be reversed for that reason. The rule seems to be well established in the state of Arkansas, from whence this case comes, that a judgment will not be reversed by an appellate tribunal, and a new trial granted, when it appears from the statement of his cause of action that the appellant. or the plaintiff in error, is only entitled to nominal damages. Trippe v. Duval, 33 Ark. 811; Buckner v. Railway, 53 Ark. 16, 18, 13 S. W. 332. The same rule obtains in many other states, and rests, as we think, upon sound reasons, since the time of the courts ought not to be consumed in the trial of cases in which no substantial right is involved, and where the recovery must, in any event. be limited to a merely nominal sum. Frivolous litigation of that character should be discouraged by all lawful methods, and appellate courts may well decline to reverse judgments rendered at nisi prius when it appears that the only error committed was in refusing to allow the plaintiff to recover an insignificant sum. Harris v. Kerr, 37 Minn. 537, 35 N. W. 379; Faulkner v. Closter, 79 Iowa, 15, 17, 44 N. W. 208; McAllister v. Clement, 75 Cal. 182, 16 Pac. 775; Bustamente v. Stewart, 55 Cal. 115; McConihe v. New York & E. R. Co., 20 N. Y. 495, 498. See, also, 1 Sedg. Dam. § 109, and cases there cited.

We accordingly turn to consider the question whether the damages laid in the complaint are too speculative and remote to be recovered. If such be the case, the judgment below should be affirmed. It will be observed from the foregoing statement that the plaintiffs do not claim any other damage than the loss of the stock which they were compelled to give as a bonus to procure a loan to the corporation in the sum of $50,000, after the defendant had declined to keep his engagement. It is also noticeable that, as the contract is described in the complaint, the defendant did not promise to loan the White Cliffs Company the sum of $75,000 for any specified period, or at any prescribed rate of interest. In view of these facts, it is manifest that the complaint does not disclose a breach of contract which could occasion any substantial loss or damage to the plaintiffs, unless they are entitled to recover the value of their stock which they transferred to secure a loan from another source. Since no agreement appears to have been made by the defendant to make a loan to the White Cliffs Company for any definite period. the law implies that the borrower was under an obligation to return it on demand (Thompson v. Ketchum, 8 Johns. 190; Purdy v. Philips, 11 N. Y. 406); and no substantial damage was occasioned by a refusal to loan money which the corporation was legally bound to repay forthwith (Bradford, E. & C. R. Co. v. New York, L. E. & W. R. Co., 123 N. Y. 316, 327, 25 N. E. 499).

Counsel for the plaintiffs insist, however, and have argued at considerable length, that because the agreement in suit was made and was not fulfilled by the defendant, the plaintiffs had the right to procure the money from some other source. and to charge the expense of obtaining it to the defendant; also that the value of their stock, which is said to have been worth $300,000, is in this instance a proper item of damage, because the defendant was aware when he made the

agreement that if he did not keep his promise the plaintiffs would be compelled to part with a part of their stock, as a bonus, to obtain a loan elsewhere. It will be seen, therefore, that the plaintiffs invoke an application of the doctrine first announced in Hadley v. Baxendale, 9 Exch. 341, 354, 356; the claim being, in substance, that the contract in suit was made in view of special facts and circumstances, that were known to both of the contracting parties, which render the value of the lost stock recoverable, although, under ordinary circumstances, it would not be a legitimate item of damage, because it was not a loss which, in the usual course of events, would result from a breach of the agreement. Attempts have been made repeatedly, of which the case in hand is an example, to push the doctrine of Hadley v. Baxendale to an unreasonable limit, but such attempts have usually failed. In a recent case (Trust Co. v. Clark, 34 C. C. A. 354, 92 Fed. 293) this court had occasion to consider under what circumstances damages for the breach of a contract, other than the customary damage, might be allowed, because of the special circumstances of the case, and because they were within the contemplation of the parties when the contract was made. The conclusion announced in that case was, in substance, that anticipated damages, different from those which would ordinarily be sustained, are not always recoverable, but will only be awarded when, in view of special circumstances, they may be regarded as the natural and direct result of the breach, and were not problematical, but were capable of being foreseen, and of being estimated with reasonable accuracy.

Now, conceding it to be true, as stated in the complaint, that the White Cliffs Company had no means of borrowing money when the contract in suit was executed, except by assigning to the lender some of its stock as a bonus, and that this fact was well known to the defendant, and was even discussed by the parties to the agreement, still we do not perceive that by reason of these facts the defendant was bound to foresee that if he did not keep his promise the plaintiffs would part with a great amount of their own stock to secure a loan to the corporation. The complaint does not show that all the stock of the corporation had been issued when the contract was signed, and that the company had no stock of its own to sell or hypothecate, and, even if that fact did appear, we would be unable to hold that the defendant was bound to anticipate that the plaintiffs would sacrifice a large part of their own holdings to secure a loan to the corporation if he did not comply with his agreement. The action of the plaintiffs in giving away some of their own stock to secure the loan was voluntary, and the defendant might as well have anticipated that, if the plaintiffs elected to use their own credit to obtain money for the corporation, they would raise it by the sale or hypothecation of some other kind of property, which was more marketable, and would not involve any considerable sacrifice. It certainly cannot be inferred, from any allegations found in the complaint, that the defendant, when he entered into the agreement in suit, had any reason to anticipate that, if he did not keep his engagement, the plaintiffs would sacrifice property of the value of $300,000 to obtain a loan in the sum of $50,000. The damages sued for cannot be recovered, therefore,

because they are not the natural and direct result of the breach of contract complained of, neither are they made such by any special facts or circumstances alleged in the complaint showing that the loss of plaintiffs' stock was an anticipated result of the breach, or that it ought to have been anticipated. In accordance with these views, the judgment below is affirmed.