McDONALD et al. v. KANSAS CITY BOLT & NUT CO.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1906.)

No. 2,324.

1. SALES—CONTRACT FOR SUCCESSIVE DELIVERIES—VENDOR'S BREACH IN FIRST MAY RELIEVE VENDEE FROM LIABILITY FOR SUBSEQUENT.

In an entire contract for successive deliveries of goods sold, a vendor's breach in the earlier deliveries may relieve the vendee from liability for subsequent deliveries, if prompt notice of refusal to perform is given by the latter.

2. SAME—VENDEE HAS OPTION TO PERFORM OR REFUSE WHICH IS LOST BY DELAY.

Upon discovery of the vendor's breach, the vendee has the option to perform, or to refuse to perform, the remainder of the contract. But silence, delay, or failure to give notice of his choice to refuse is a choice to perform, and it destroys the option.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 318, 319.]

3. SAME—IMMEDIATE NOTICE OF REFUSAL INDISPENSABLE TO VENDEE'S RELEASE FROM LIABILITY TO SUBSEQUENTLY PERFORM.

Immediate notice to the vendor, upon the discovery of his default in the earlier deliveries, that the vendee will not receive subsequent deliveries, or will not further perform, is an indispensable condition of

the latter's release from liability for subsequent deliveries which comply with the contract.

**4. DAMAGE—BREACH OF CONTRACT—MEASURE.**

Those damages which are the natural and probable result of a breach of a contract, those which the parties may reasonably anticipate as the effect of the breach under the particular circumstances of the case, which are known to them when the contract is made, and those only, may be recovered in actions upon contracts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 58.]

**5. SALES—BREACH OF CONTRACT—ORDINARY RULE.**

The difference between the value of the goods furnished and the value of the goods the vendor agreed to furnish constitutes the measure of damages the vendee is entitled to recover for a failure to furnish articles of an agreed character, in the absence of knowledge of special circumstances which make other damages natural and probable, because these are the only damages that would naturally flow from the breach of such a contract in the usual course of events.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1174–1201.]

**6. DAMAGES—BREACH OF CONTRACT—KNOWLEDGE OF SPECIAL CIRCUMSTANCES.**

Proof of knowledge by the defaulting party at the time he makes the contract of special circumstances which make damages other than those ordinarily implied by the contract and naturally flowing from it the natural and probable effect of its breach will warrant the recovery thereof.

**7. SAME—PROXIMATE AND REMOTE DAMAGES—FACTS—CONCLUSION.**

A manufacturer sold steel pipe-bands, which it knew at the time it made the contract were to be used by the purchaser to bind together staves in wooden pipes for the purpose of conducting water to a city. There were latent defects in the bands made under this contract, which were not discoverable until an attempt was made by the purchaser to bend them around and to fasten them upon the pipes.

*Held*, the loss of the expense of hauling the bands, which were defective, from the railroad station to which they were sent under the contract to the place of their use, a few miles distant, of loading, unloading, distributing, gathering, counting, painting, and of placing them upon and taking them off the pipes when broken, was the natural and probable effect of such defects, which a person of ordinary prudence in the circumstances of the manufacturer would have anticipated, and the vendee was entitled to recover it as damages.

But alleged damages, in addition to those above specified on account of delay, loss of time, trouble, and extra work of superintendence, were too remote and speculative for allowance.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

John Q. Dier (John P. Brockway, Charles J. Hughes, Jr., and Gerald Hughes, on the brief), for plaintiffs in error.

Edwin Van Cise and Walter Littlefield (Frank L. Grant, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. The Kansas City Bolt & Nut Company, a corporation, brought an action against R. P. McDonald, who had agreed to purchase from it nine car loads of steel bands, rods, nuts, and shoes, and against John S. Worthington and Thomas Keely,

who had guarantied McDonald's performance of his contract, for the purchase price of the last four car loads of the goods which the vendor delivered, but which McDonald had refused to receive. Five car loads of the material had been received and paid for by him before these four car loads were shipped. The defendant answered the complaint for the price of these cars that the articles furnished failed to fulfill the terms of the contract, that the bands, which were made for the purpose of encircling and holding together wooden pipes made of staves for the purpose of conducting water from a reservoir in the mountains to the city of Golden, had latent defects, which caused many of them to break and become worthless when they were bent around the pipes and secured in place, but which were not discoverable by inspection, and that the defendant, McDonald sustained damages by his attempt to use the bands in the five car loads which he received in the sum of $3,687.29, for which he asked to recover upon a counterclaim. There was a verdict for the plaintiff, in which the jury allowed to the defendant a portion of this counterclaim, and at the hearing in this court counsel for the defendants below, the plaintiffs in error, conceded that the judgment should be affirmed unless there was error in the refusal of the Circuit Court to submit to the jury the first instruction which they requested, or in its rulings upon the measure of damages which McDonald was entitled to recover on account of the failure of the plaintiff to comply with the contract. This was the requested instruction:

"If the jury believe from the evidence in this case that the pipe-bands first shipped to defendants by plaintiff did not comply with the terms of the .written contract between the parties hereto, and that the defendants were thereby damaged; that the defendants had a right to presume that the four car loads of pipe-bands thereafter shipped to them were of the same kind as those previously shipped, and that they had a right to refuse to accept them."

The facts disclosed by the evidence which were material to the determination of the question of the legality of this instruction are these: The contract was made in April, 1903, and by its terms the goods were to be shipped between June 1st and September 1st in that year to the city of Golden, Colo., free on board the cars at Kansas City, Mo., where the plaintiff was to manufacture them. The contract did not require the plaintiff to bend the pipe-bands, and the first two car loads were delivered about the last of July, 1903, without bending them. Some of these pipe-bands broke in the process of securing them around the pipes, and McDonald immediately complained to the plaintiff that they were defective and that they broke. Thereupon the plaintiff bent the bands which it subsequently shipped, at its factory, and promised to replace free of cost those that had broken. In August, September, and October McDonald received and paid for three car loads of these bent bands. The bands in these car loads were much better than those in the first two loads, so much better that out of 7,655 half-inch bands which broke in the entire five car loads about 7,600, according to the testimony of McDonald, were in the two or three car loads first shipped, and only about 55 in the last two or three car loads he used. It was in this state of the case

that in the latter part of October and in November, 1903, the plaintiff shipped the four remaining car loads of pipe-bands and other materials which its contract required it to furnish, and after they had arrived at Golden, and in December, 1903, McDonald, without any examination or trial of these articles, refused to receive them because the pipe-bands he had obtained from the previous car loads were defective. The question is, had this purchaser the right to presume that the four car loads last shipped were of the same character as those previously shipped, and to refuse to accept them because those first shipped did not comply with the terms of the agreement? The question is divisible, and it involves these two issues: Had the purchaser the right to presume that the pipe-bands in the last four cars were of the same kind as those previously shipped, and the right to reject them on account of this presumption? And had the purchaser the right to reject them regardless of the presumption because those first shipped did not fulfill the stipulations of the agreement? Conceding, without deciding, that from the fact that 7,600 half-inch bands in the first three cars broke a presumption arose that bands subsequently shipped would be of the same character and would fail to comply with the contract, that presumption was destroyed before the four car loads were sent by the fact that only about 55 of the bands of this kind in the two intermediate car loads broke; and if any presumption on this subject existed, it was the counter presumption that the pipe-bands in the four subsequent car loads would be of the same better quality as those last received by McDonald, which appear to have substantially complied with the contract. Hence, he had no right to reject those in the last four car loads on account of the alleged presumption claimed in the requested instruction, and the first question must be answered in the negative.

Counsel insist, however, that the purchaser had the right to refuse to take the articles in the last four car loads regardless of their presumptive character, because the goods furnished by the plaintiff in its first deliveries were not in accordance with the terms of the contract, and in support of this proposition they cite Norrington v. Wright, 115 U. S. 188, 205, 6 Sup. Ct. 12, 29 L. Ed. 366; King Philip Mills v. Slater, 12 R. I. 82, 34 Am. Rep. 603; Cleveland Rolling Mill v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920; Pope v. Allis, 115 U. S. 363, 371, 372, 6 Sup. Ct. 69, 29 L. Ed. 393; Husted v. Craig, 36 N. Y. 221; Campbell Printing Press & Mfg. Co. v. Marsh, 20 Colo. 22, 36 Pac. 799; Filley v. Pope, 115 U. S. 213, 219, 220, 6 Sup. Ct. 19, 29 L. Ed. 372; National Surety Co. v. Long, 125 Fed. 887, 60 C. C. A. 623, and other cases of like character. The decisions in these cases hold that, where the vendor is required by an entire contract, as in the case at bar, to make successive deliveries of the articles sold, and the first deliveries fail to comply with the terms of the agreement either in the quality or quantity of the goods or in the times or places of delivery, the vendee by prompt notice of his refusal to further perform upon the discovery of the failure may relieve himself from liability for subsequent deliveries. This, however, is not his only remedy. He has the option, upon the discovery of the

seller's default, to refuse to receive and pay for further deliveries, and thus to terminate the contract, or to permit its performance to proceed, and to rely upon his damages for the vendor's breach. But he may not delay his exercise of this choice. Delay, vacillation, silence, or the absence of an immediate notice that he will not further perform is an election by the vendee that the performance of the contract shall proceed, and that he will rely upon his claim against the vendor for damages for the breach, and upon that claim alone, for his remedy. He is met here by the principle of estoppel, by the rule that he who by his acts or statements, or by his silence when he ought to speak out, intentionally or negligently induces another to so act that he will sustain injury by the former's denial of his acts, statements, or silence or of their natural effect, is estopped to repudiate them. If he remains silent after he discovers the fault of the vendor, and permits him to incur the trouble and expense of the subsequent preparation and delivery of the contracted goods, he is thereby estopped from claiming a release from his obligation to receive and to pay for them on account of the defects in the earlier deliveries. Immediate notice to the vendor, upon the discovery of his default in the earlier deliveries, that the vendee will not further perform the contract, is an indispensable condition of the latter's release from his liability to accept and to pay for subsequent deliveries which comply with the terms of the agreement. Pullman Car Co. v. Metropolitan Ry. Co., 157 U. S. 94, 110, 111, 15 Sup. Ct. 503, 39 L. Ed. 632; Clark v. Wheeling Steel Works, 53 Fed. 494, 498, 3 C. C. A. 600, 604; German Sav. Inst. v. De La Vergne Refrig. Mach. Co., 70 Fed. 146, 154, 17 C. C. A. 34, 37.

The chief failure of the plaintiff was in the character of the pipe-bands in the first two car loads of materials, which were delivered about the last of July, 1903. McDonald discovered this default in August of that year, and immediately complained of it. The plaintiff thereupon furnished three more car loads of better bands, which it bent at the factory, and promised to replace all that had been broken free of charge. McDonald received, used, and paid for the three latter car loads. The plaintiff was a manufacturer. It was making and shipping these bands for the specific purpose of binding the wooden pipe that was to be used to conduct water to the city of Golden. The pipe-bands were not worth their contract price in the open market for any other purpose. McDonald gave the manufacturer no notice that he would not accept and pay for the remaining four car loads which the vendor was required to make and deliver, and the plaintiff manufactured and shipped them in the belief that he would do so. It was not until after these four car loads had arrived at Golden, and, not until December, 1903, that he first gave notice to the plaintiff that he would not accept them because the bands previously shipped had been defective. The notice came too late. The vendee was estopped by his receipt of the three car loads after his knowledge of the vendor's default, by his failure to notify it of his intention not to receive the remainder of the contracted articles, and by the fact that the plaintiff had made and shipped them in reliance upon the contract which required it to do so, and upon the vendee's acts and silence, in the full belief that he would accept and pay for them, from relieving himself

from liability for them on account of any previous defaults of the vendor. The second question must therefore be answered in the negative, and there is no ground upon which the requested instruction can be sustained.

We turn to the question of the measure of McDonald's damages. He claimed: (1) The contract price of the broken bands; (2) the freight on them from Kansas City to Golden; (3) the expense of loading, of hauling from the station at Golden to the place of use, and of unloading them; (4) the expense of distributing, gathering, and counting them; (5) the expense of painting them and of putting them on and taking them off the pipes; and (6) his loss by delay, trouble, and extra work of superintendence caused by the breaking of the bands. The Circuit Court allowed evidence of the first two items, and refused to allow any evidence of the others, to be considered by the jury. The rules of law by which the measure of damages in this case must be ascertained are no longer open to discussion. Those damages which are the natural and probable result of a breach of a contract, those which the parties may reasonably anticipate as the effect of the breach under the particular circumstances of the case, which are known to them when the contract is made, and those only, may be recovered in an action upon a contract. Rockefeller v. Merritt, 22 C. C. A. 608, 617, 76 Fed. 909, 918; Central Trust Co. v. Clark, 92 Fed. 293, 297, 34 C. C. A. 354, 358.

In the absence of proof aliunde of knowledge by the defaulting party at the time an ordinary contract of sale is made of special circumstances which make other damages the natural and probable effect of its breach, the difference between the value of the goods furnished and the value of the goods the vendor agreed to furnish constitutes the measure of the damages which the vendee may recover for a failure to furnish articles of the agreed character, because this is the only damage implied by the contract, the only damage that would naturally flow from its breach in the usual course of events. Central Trust Co. v. Clark, 34 C. C. A. 354, 358, 92 Fed. 293, 297; Drug Co. v. Byrd, 92 Fed. 290, 34 C. C. A. 351; Railroad Co. v. Bucki, 16 C. C. A. 42, 46, 68 Fed. 864, 868; Hadley v. Baxendale, 9 Exch. 341, 354, 356; Primrose v. Telegraph Co., 154 U. S. 1, 29, 14 Sup. Ct. 1098, 38 L. Ed. 883; The Ceres, 19 C. C. A. 243, 72 Fed. 936, 943; Boyd v. Brown, 17 Pick. (Mass.) 453, 461; Ingledew v. Railroad, 7 Gray (Mass.) 86, 91; Railway Co. v. Mudford (Ark.) 3 S. W. 814, 816; Kempner v. Cohn, 47 Ark. 519, 527, 1 S. W. 869, 58 Am. Rep. 775.

Proof of knowledge by the defaulting party at the time he makes the contract of special circumstances which make damages other than those implied by the contract and naturally flowing from it the natural and probable effect of its breach will warrant the recovery thereof. Boutin v. Rudd, 27 C. C. A. 526, 82 Fed. 685; Central Trust Co. v. Clark, 92 Fed. 293, 298, 34 C. C. A. 354, 359; Accumulator Co. v. Dubuque St. Ry. Co., 12 C. C. A. 37, 42, 64 Fed. 70, 79.

The bolt company admits in its answer that at the time it made the contract with McDonald he claimed that he had entered into a contract with the city of Golden to construct for it a system of waterworks; that it knew that the material it was to furnish was to be

used in the manufacture of a pipe line of some kind at or for the city of Golden, in accordance with certain blue prints which were furnished to it; and that before it executed the agreement it had caused an investigation to be made of some proceedings of the city of Golden antecedent to the date of the contract of the city with McDonald, and had doubted the legality of any contract between him and the city. The defects of the broken bands which the plaintiff furnished were latent, and were discoverable by the purchaser, in the ordinary course of events, by actual application to the wooden pipe only. A vendor who knew that these pipe-bands were to be used by the purchaser in the construction of wooden pipes would reasonably anticipate that such latent defects which caused the bands to break when an attempt was made to bend them around and to fasten them upon the wooden pipes would entail upon the purchaser who bought them the useless expense of hauling them from the station at Golden to the place where they would be used upon the pipes; of loading and unloading them for the purpose of this transportation; of distributing, gathering, and counting them; of putting them on and taking them off the pipes, and perhaps of painting them, if painting was necessary and customary before such bands were applied to such a purpose. This expense was the natural and probable effect of these latent defects—an effect which a person of ordinary prudence and foresight, possessed of the knowledge of the plaintiff, might well anticipate, because he must know that in the ordinary and natural course of events the bands could not be applied to the pipes, and their defects would not be discoverable until they had been loaded, hauled, unloaded, and put upon the pipes. The court should therefore have received the evidence in support of the third, fourth, and fifth items of damages specified above, which amounted, in the aggregate, according to the claim of McDonald, to $673.02.

The sixth item of damages claimed is $1,500 for delay, loss of time, trouble, and extra work of superintendence occasioned by the breaking of the bands and the substitution of others in their place. In view of the fact that the time and labor, and hence the delay, of the men and of the teams in hauling, loading, unloading, putting on, and taking off the bands is specified and allowed in the preceding items, this claim is too remote and speculative to sustain a recovery or to permit of an allowance. The damages here claimed are not the natural and probable effect of the defects in the bands, and they could not have been reasonably anticipated therefrom by a person of ordinary prudence in the circumstances of the vendor. There was no error in the rejection of the evidence which related to this item.

The result is that the only error in the trial of the case was the rejection of the evidence in support of the third, fourth, and fifth items of damages. Since the entire amount claimed on account of these items is $673.02 and interest, and the defendant cannot possibly secure the allowance of more on account of them, but may upon a new trial obtain less than this amount, all error to the prejudice of the defendants may be extracted from this case by the reduction of the judgment against them by the amount of $673.02 and interest. The judgment below will accordingly be reversed, and the case will

be remanded to the Circuit Court, with instructions to grant a new trial unless within 40 days from the filing of this opinion the plaintiff remits from and satisfies the judgment below as of the date of its rendition to the extent of $673.02, and interest thereon at 6 per cent. per annum from October 27, 1903, to May 27, 1905, and files a transcript of its remittitur and satisfaction in this court, in which case the judgment will be affirmed, with costs against the defendant in error, and it is so ordered.