## JOSTEN MFG. CO. v. MEDICAL ARTS BLDG. CO.

### No. 9908.

Circuit Court of Appeals, Eighth Circuit.

Oct. 24, 1934.

Joseph N. Moonan, of Waseca, Minn. (A. L. Sperry, of Owatonna, Minn., and Ray G. Moonan, of Waseca, Minn., on the brief), for appellant.

William E. MacGregor, of Minneapolis, Minn. (Arnold L. Guesmer and Harry S. Carson, both of Minneapolis, Minn., on the brief), for appellee.

Before SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge.

In this action at law by a landlord against a tenant for rent due according to the terms of a written lease, a verdict was directed for the plaintiff, and the defendant has appealed from the judgment on the verdict. The property leased was described as room 207 on the second floor of the Medical Arts building in Minneapolis, Minn. At the time of the lease, this room was entered from a hallway which ran north and south and led to a bank of passenger elevators. The term of the lease began at the date between March 1 and May 1, 1929, when the tenant should take possession, and continued to May 31, 1934. The tenant entered into possession on April 1, 1929, and continued in possession until May 31, 1930, when it vacated the premises. The action was for rent claimed to be due for the period beginning June 1, 1930, and ending April 30, 1932. In substance, the defendant's answer, so far as it is material, after admitting the execution of the lease and its occupancy under it, alleged that it had elected to rescind

the lease and had so notified the plaintiff, because the defendant had been induced to execute the lease by a promise of the plaintiff, which it never intended to perform and never did perform. It alleged a promise by the defendant that it would construct a new hallway, running east and west, which would connect with the hallway running north and south, according to the floor plans appearing in a booklet furnished to the defendant. These plans showed a hallway which led from another hallway in a different part of the building, past another bank of elevators, and connected with the north and south hallway in front of room 207.

The answer admitted that when the defendant took possession on April 1, 1929, it had discovered that the hallway had not been constructed in accordance with the plans. There were allegations in the answer of subsequent negotiations between the parties, of a demand in April, 1930, that the defendant should perform its promise, of defendant's failure to comply, and that the rental value of the room in the absence of the new hallway was less than that fixed by the lease.

The reply denied the allegations relating to the alleged promise, set forth some provisions of the lease as an estoppel, and by an amendment made at the trial, alleged a further estoppel and a ratification of the lease because the defendant had remained in possession and had paid the rental after knowledge of the alleged fraud.

At the trial, testimony was received apparently without objection, tending to prove what was said in the preliminary negotiations for the lease. In brief, the testimony shows that the plaintiff's rental agent stated to the officer representing the defendant that the new hallway would be constructed as shown by the booklet, and would be completed by the date when the defendant was ready to move in. Thereafter the lease was signed by the parties, in December, 1928. When the defendant took possession on April 1, 1930, the hallway had not been constructed, nor begun. The defendant's officer in charge of the office was the officer to whom the promise had been made, according to the testimony, and he knew that the hallway had not been built, but the defendant nevertheless took possession, and made no complaint to any one. The defendant promptly paid the rent due on the 1st days of April, May, June, and July, 1929, without any protest, and without making any further inquiry. In July, 1929, the defendant learned that the firm of Lee Bros. had a lease covering the part of the building where the new hallway was shown on the plans, and that this lease did not expire until 1933. The defendant paid the rent due on August 1st and September 1st, and made no complaint to, nor inquiry of, the plaintiff. The first time the defendant mentioned to the plaintiff the subject of the absence of the hallway was in September, when the defendant's officer saw the rental agent of plaintiff who had conducted the negotiations for the lease, and was told that the plaintiff was trying to make some arrangements with Lee Bros. that would allow the hallway to be constructed. The defendant's officer concluded that the result of the negotiations with Lee Bros. was doubtful, but decided that the defendant would continue to occupy the room and would take a chance on the doubtful negotiations because he considered that it was cheaper to do so, than to move. The defendant continued to pay the rent monthly as long as it occupied the room. The defendant's officer complained to the plaintiff on a number of occasions during the period from November to February, because the promised hallway had not been built. The plaintiff insisted that negotiations were going on with Lee Bros., and that the hallway would be constructed. There were some negotiations in this period looking to occupancy of some other portion of the building by the defendant. In January, 1930, the defendant wrote to the plaintiff a letter saying that at that time it had on lease certain space on the second floor that it was desirous of unloading, and on February 20, 1930, it wrote a second letter, asking if the plaintiff would consider letting it out of the lease entirely for a cash settlement. About April 14 or 15, 1930, the defendant was informed that the plaintiff was standing on the terms of the lease, and the defendant then served notice on the plaintiff that it would move out on May 31st. Appellant complains because of the directed verdict.

The principles which determine the question involved are well stated in 2 Williston on Contracts, § 700, as follows:

"The problem is simply this: Does one party to a contract who has acquired a right to rescind it, or refuse to go on with it, and who, nevertheless, allows the party in default to continue with the contract, and accepts his defective performance, thereby manifest an agreement that the performance as received shall be taken as full satisfaction of all obligations? If a party in default on a contract is allowed to continue to perform, this must necessarily involve the loss of any right of rescission or refusal to go on with the contract because of any known default that has

already taken place. Thus, when a buyer knowingly accepts goods which are not what he contracted to buy, he cannot rescind the sale; and the retention of articles purchased is as effectual an acceptance of them, as if the purchaser intimates to the seller that they are accepted. This presents a case of election, but the obligation of the party in default is not necessarily thereby terminated, nor his liability to pay damages for his insufficient performance."

█ The promise which was made to the defendant was that the new hallway would be constructed by the time the defendant was ready to move into the room leased. It was not a promise that it would be constructed in a reasonable time, or by the time the reconstruction of the building was finished, or at any other time than the date when the defendant should move in. At the time the defendant took possession it knew that the hallway was not constructed, and it continued to occupy the room, and to pay the rental according to the terms of the lease for the months of April, May, June, July, and August and did not make any complaint before September. Even after that time, while it complained that the hallway was not constructed, it did not declare its purpose to vacate the room until the following April. In Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798, the rule was stated:

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted."

The rule was repeated in Shappirio v. Goldberg, 192 U. S. 232, 242, 24 S. Ct. 259, 261, 48 L. Ed. 419, as follows:

"It is well settled by repeated decisions of this court that where a party desires to rescind upon the ground of misrepresentation or fraud, he must, upon the discovery of the fraud, announce his purpose and adhere to it. If he continues to treat the property as his own the right of rescission is gone, and the party will be held bound by the contract. Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798; McLean v. Clapp, 141 U. S. 429, 12 S. Ct. 29, 35 L. Ed. 804. In other words, when a party discovers that he has been deceived in a transaction of this character he may resort to an action at law to recover damages, or he may have the transaction set aside in which he has been wronged by the rescission of the contract. If he choose the latter remedy, he must act promptly, 'announce his purpose and adhere to it,' and not by acts of ownership continue to assert right and title over the property as though it belonged to him."

It has been affirmed by this court in many cases. Burnes v. Burnes, 137 F. 781; Burk v. Johnson, 146 F. 209; McDonald v. Kansas City Bolt & Nut Co., 149 F. 360, 363; Richardson v. Lowe, 149 F. 625, 628; International Harvester Co. of America v. Ricke, 9 F.(2d) 776, 781; Albert Lea Foundry Co. v. Iowa Sav. Bank, 21 F.(2d) 515, 520.

█ The defendant, by the acceptance and retention of possession, with knowledge that the promise relied upon had not been performed, manifested its election to accept the performance tendered, and it thereby lost its right to rescind, or to refuse to comply with the terms of the lease. Bell v. Baker, 43 Minn. 86, 87, 44 N. W. 676; O'Neil v. Davidson, 147 Minn. 240, 242, 180 N. W. 102; Arcade Inv. Co. v. Hawley, 139 Minn. 27, 28, 165 N. W. 477; Whitney v. Allaire, 1 N. Y. 305, 312; Pryor v. Foster, 130 N. Y. 171, 175, 29 N. E. 123; Jorgeson v. Hock, 234 Ill. 631, 634, 85 N. E. 296; Hills v. Campbell, 87 Or. 690, 694, 170 P. 298, 171 P. 565; Gamble-Robinson Co. v. Buzzard (C. C. A.) 65 F.(2d) 950, 954; 4 R. C. L. 514.

There was no error in instructing the jury to return a verdict for the plaintiff and as there is no other substantial question presented, the judgment will be affirmed.