MANHATTAN TRUST CO. v. SIOUX CITY CABLE RY. CO. (WESTINGHOUSE ELECTRIC & MANUFACTURING CO. et al., Interveners).

(Circuit Court, N. D. Iowa, W. D. October 28, 1896.)

1. CONDITIONAL SALE—MORTGAGES.
Where property is sold and delivered under a contract that it is to remain the property of the vendor until fully paid for, which is not acknowledged and recorded, it is not subject, under Code Iowa, § 3093, to the lien of a prior mortgage of all the property then owned, or thereafter to be ac-

quired, by the vendee, except in so far as the interest of the vendee extends. Myers v. Car Co., 102 U. S. 1, followed.

2. STREET-RAILWAY COMPANIES— POWER FURNISHED—LIENS—PRIORITY.

Where a street-railway company whose property is mortgaged has contracted a debt for motive power furnished since the mortgage was executed, such indebtedness takes priority of the mortgage.

3. EQUITY—CIRCUITY OF ACTION—SUBROGATION.

Where a debt contracted by a corporation is a first lien upon property which never became its own, by reason of its failure to carry out the terms of the contract of sale, equity will decree that it be paid out of a fund in court arising from a sale of the corporation's property, in order to avoid the circuity of action which would result if the owner of the property paid off the lien, and thus became subrogated to the rights of the lien creditor.

In Equity.

Swan, Lawrence & Swan, for complainant.

Wright & Hubbard, for intervener Sioux City Electric Co.

Joy, Call & Joy, for intervener Westinghouse Electric & Manufacturing Co.

SHIRAS, District Judge. The original bill in this case was filed by the Manhattan Trust Company for the purpose of foreclosing a mortgage upon the property of the Sioux City Cable Company, and a receiver of the property was appointed in the usual manner. The case is now before the court upon petitions of intervention filed on behalf of the Westinghouse Electric & Manufacturing Company and the Sioux City Electric Company, presenting the question of the rights of the parties to a certain electric generator which was furnished by the Westinghouse Company under a written contract entered into with John Peirce, either in his individual capacity, or as president of the Sioux City Cable Company, and dated April 20, 1894. In this contract it is provided that:

"The title and ownership of the property called for and furnished under the terms of this agreement shall remain in the company until the full and final payment therefor shall have been made by the purchaser according to the terms agreed upon, and until notes, if any, shall have matured and been settled in full."

This contract was not acknowledged or recorded, and for that reason it is claimed to be of no force against the rights of the bondholders represented by the Manhattan Trust Company. When this contract was entered into, the property of the cable company was in the hands of a receiver appointed by the district court of Woodbury county, Iowa, upon a petition filed by John Peirce, and that court had authorized the receiver to contract with John Peirce to change the railway from a cable to an electric road, which change was made; and subsequently the receiver was discharged, and the railway line went into the possession of a new company, known as the "Consolidation Company." Subsequently the Manhattan Trust Company filed the present bill for the foreclosure of the mortgage executed by the Sioux City Cable Company to secure the bonds issued by the company; the mortgage being dated July 1, 1889. The Westinghouse Company, with leave of court, filed in the case a petition of intervention, for the purpose of assert-

'ing its right to the generator, which had not been paid for. This petition was on file when the decree for the sale of the mortgaged property was entered, and it was stipulated between the parties in interest that the decree and sale should not affect the rights of the parties in and to the generator, but that the ownership thereof should be determined the same as though the mortgage sale had not been had.

The Code of Iowa (section 3093) provides that:

"No sale, contract or lease wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser of the vendee or lessee in actual possession obtained in pursuance thereof, without notice, unless the same be in writing, executed by the vendor or lessor, acknowledged and recorded the same as chattel mortgages."

In the case of Myer v. Car Co., 102 U. S. 1, this section of the statute came before the supreme court for construction; and it was held that a contract such as is found in the written agreement of April 20, 1894, whereby the title of the generator was to remain in the Westinghouse Company until the same was paid for, was valid, as against a prior mortgage, although the same had not been acknowledged or recorded. The ground of the ruling is that, when the mortgage was executed and accepted by the mortgagee, the property in question was not then included in or covered by the mortgage, and that the only claim which the mortgagee had thereto was under the clause in the mortgage intended to apply to after-acquired property, and that this clause can only apply to property owned by the mortgagor; or, in other words, so far as after-acquired property is concerned, the mortgagee gets only the right and interest of the mortgagor. As already stated, the mortgage represented by the Manhattan Trust Company, the complainant herein, was executed on July 1, 1889, and the generator was furnished, and the contract with relation thereto was entered into, in 1894. Under the ruling of the supreme court in Myer v. Car Co., supra, it is therefore clear that, as between the trust company and the Westinghouse Company, the latter is entitled to the generator, by force of the contract under which it was furnished, and which provided that, until paid for, the title and ownership of the generator should remain in the vendor, with the right to take possession thereof upon the failure of the purchaser to make payment as agreed upon.

On behalf of the intervener, the Sioux City Electric Company, a claim to or lien upon the generator is asserted upon the ground that on or about May 15, 1894, a verbal agreement was entered into between it and the Sioux City Cable Company, whereby the electric company agreed to furnish the electric power needed by the cable company for the agreed price of $450 per month, and the generator in question was delivered to the electric company, with the understanding that the electric company should have a lien on the generator, and be entitled to hold possession thereof, until all sums due it for power furnished should be paid by the cable company; and it is averred that the electric company fur-

nished the requisite power to the cable company, for which there remains due and unpaid the sum of $1,179.75. This indebtedness accrued for power furnished during the months of May, June, July, August, September, and October, 1894, being the balance remaining unpaid for those months under the contract rate; and it is of such a character that equitably it should be paid in preference to the mortgage debt, under the rule laid down in Fosdick v. Schall, 99 U. S. 235, and the cases based thereon. The party primarily liable for this indebtedness is the Sioux City Cable Company. If it be true that the electric company has an enforceable lien upon the generator, as security for the debt due it, it gets this lien by virtue of the contract with the cable company; and it is clear that, if the Westinghouse Company is compelled to pay this lien in order to protect its title and right in and to the generator, it will by such payment become entitled to be subrogated to the right of the electric company, as against the cable company and its property. The rule applicable to cases of this character is given in Sheld. Subr. § 12, in the following terms:

"As a general rule, all persons having an interest in property subject to an incumbrance by which their interest may be prejudiced or lost have a right to disengage the property from such incumbrance by the payment of the debt or charge which creates it; and, if such debt be one for which the ultimate liability rests upon another party, they will, upon their payment, be subrogated to the right of the creditor against the ultimate debtor, and against the property upon which the debt was a charge."

Under this rule, it follows that if the Westinghouse Company, for the purpose of freeing the generator from the lien held thereon by the electric company, should now pay off the lien, it would be entitled to be subrogated to the rights of the electric company against the cable company touching the debt due from the latter company, and would thereby become entitled to demand the payment thereof, as a claim preferential to the mortgage debt, because the indebtedness was for the power furnished to operate and run the cars over the line of railway owned by the cable company.

When the decree of foreclosure was entered, the hearing upon the petitions of intervention now before the court was postponed until a future day,—it being so provided in the decree,—with the further condition that $2,000 out of the sum realized from the sale of the mortgaged property should be deposited in the registry of the court, to be appropriated to the payment of the claims of the named interveners in case any sum should be adjudged due either of them, and to be superior in equity to the lien of the mortgage. This sum is now in the registry of the court, and it is therefore within the power of the court to prevent circuity of action by making the proper order for the application of this fund. As already indicated, the court holds that the Westinghouse Company holds the title to, and is entitled to the possession of, the generator, as against the Sioux City Cable Company, and as against the Manhattan Trust Company, the trustee in the mortgage securing the bondholders of the cable company. The electric company only

claims a lien upon the generator, the title to which is in the Westinghouse Company; and this lien is to secure a debt due the electric company from the cable company, which debt is of a character entitling it to preference in payment over the mortgage creditors of the cable company. If the Westinghouse Company should now clear the title to the generator by paying the debt due from the cable company to the electric company, thereby discharging the lien on the generator, it would be entitled to be subrogated to the right of the electric company, as against the cable company, and thus become entitled to receive from the proceeds of the sale the amount due the electric company for the power used to operate the railway line. The rights of the parties are therefore protected by ordering the payment of the sum due the electric company out of the money in the registry of the court, thereby releasing and discharging the lien on the generator, and ordering the delivery of the generator to the Westinghouse Company. Decree accordingly.