LOUISVILLE & N. R. CO. v. MEMPHIS GASLIGHT CO. et al.

(Circuit Court of Appeals, Sixth Circuit. July 21, 1903.)

No. 1,149.

1. QUASI PUBLIC CORPORATIONS—GAS PLANTS—OPERATING MATERIALS—CLAIMS
—PRIORITY—MORTGAGES—BILL—DEMURRER.

At various times between May, 1892, and August, 1893, complainant furnished coal and coke to defendant gaslight company for use in its business, and for the amount due therefor obtained a judgment by confession against defendant in January, 1894. Executions were returned nulla bona against the corporation, and its assets were subsequently sold by trustees for the payment of mortgage bondholders, without the appointment of a receiver. On April 12, 1894, complainant filed a bill alleging such facts, and averring on information and belief that within 12 or 18 months before the bill was filed there had been a diversion of the company's earnings to the payment of interest on such bonds and for the improvement of the plant, but failed to allege the dates or amounts of such diversion, or that they occurred within the time when the expenses for coke and coal furnished accrued. *Held*, that the facts alleged were insufficient to entitle complainant to be paid out of the proceeds of the sale of the corporation's assets in preference to the mortgagee.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

John W. Judd, for appellant.

T. K. Riddick, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. The question involved is whether an unsecured creditor of a gas company is entitled to be paid out of the proceeds of the sale of the plant, in preference to the mortgagees, because it furnished coal and coke used in operating the plant, although no receiver was ever asked for or appointed. The bill below was dismissed upon demurrer, and the case comes here by way of appeal from this judgment.

It appears from the bill that the defendant below, the Memphis Gaslight Company, was a quasi public corporation owning and operating a gas plant in Memphis, and charged (so it is alleged) with the duty of making and furnishing gas within that city for public and private purposes. In April, 1873, the company placed a first mortgage upon its plant to secure an issue of $240,000 of bonds, and in July, 1892, a second mortgage to secure an issue of $400,000 of bonds, $240,000 of which were to be reserved until the first mortgage bonds should be paid. During the months of May, November, and December, 1892, and January and February, 1893, the complainant below, the Louisville & Nashville Railroad Company, furnished the gas company coal and coke on an account amounting to $2,808.45, for which a note was given, and during the months of March, April, May, June, July, and August, 1893, furnished coal and coke on an account amounting to $3,657.55. On January 27, 1894, the railroad company took a judgment by confession in the state court against the gas company on this note and account for $6,809.90. On March 17, 1894, an execution on this judgment was returned nulla bona, and on April 21, 1894, the

railroad company filed its bill in the court below, setting out the above facts, averring, upon information and belief, that more than enough of the current income to pay the complainant's claim had been diverted to the payment of interest and the improvement of the plant within 12 or 18 months preceding, alleging that the trustee under the second mortgage was about to sell the plant and apply the proceeds to the payment of the bonds issued under the two mortgages, and praying that the court declare the preferential character of the complainant's claim, and require the trustee to set aside a sufficient sum from the proceeds of the sale to satisfy its judgment. No receivership existed or was prayed for.

The allegations respecting a diversion of the current income were of the most general nature. The bill averred, upon information and belief, that the gas company had made a considerable amount of money within the past 12 or 18 months, more than enough to pay the complainant's claim, and that much of this money had been used to pay the interest on the bonds and to improve the plant. No details were given.

On May 20, 1899, an amended bill was filed stating that after the filing of the original bill the trustee had sold and conveyed the property of the gas company, and asking such additional relief as might be proper under the changed circumstances.

The appellant relies upon the doctrine announced in Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, in the case of a railroad in the hands of a receiver, and seeks to apply it to a gas plant not in the hands of a receiver, urging that a gas company is a quasi public corporation, charged with the duty of furnishing a public convenience, which should be supplied without interruption, and therefore those who furnish material or labor to keep it in operation should be accorded an equitable lien in preference to mortgagees. In the interest of the public it is insisted the gas plant must be kept "a going concern," and therefore those who keep it going should be paid first out of the proceeds of its sale.

In the case of Wood v. Guarantee Trust Company, 128 U. S. 416, 9 Sup. Ct. 131, 32 L. Ed. 472, an attempt was made to apply the doctrine of Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, to a waterworks company which supplied water to a municipality, and Mr. Justice Lamar, speaking for the court, said (page 421, 128 U. S., page 132, 9 Sup. Ct., 32 L. Ed. 472):

"The doctrine of Fosdick v. Schall has never yet been applied in any case, except that of a railroad. The case lays great emphasis on the consideration that a railroad is a peculiar property, of a public nature, and discharging a great public work. There is a broad distinction between such a case and that of a purely private concern. We do not undertake to decide the question here, but only point it out. There is other ample ground upon which to decide this question."

This probably still remains true of the Supreme Court, but other federal courts have applied the doctrine to street railway, telephone, and telegraph companies. Manhattan Trust Company v. Sioux City Cable Railway Company (C. C.) 76 Fed. 658; Central Trust Company v. Clark, 81 Fed. 269, 26 C. C. A. 397; Keelyn v. Carolina Mutual Telegraph & Telephone Company (C. C.) 90 Fed. 29; Illinois, etc.,

Banking Company v. Doud, 105 Fed. 123, 44 C. C. A. 389, 52 L. R. A. 481; Guaranty Trust Company v. Galveston City Railway Company, 107 Fed. 311, 46 C. C. A. 305; and other cases.

Obviously, street railroads and telephone and telegraph companies are similar to railroad companies in a sense gas companies are not. A gas company is more like a waterworks company. It is more of a private concern—a manufacturing enterprise. It supplies a public convenience, but it does not enjoy the same privileges and franchises, nor would its stoppage result in that injury to the public and detriment to the mortgaged security which would flow from the stoppage of a railroad. A gas company is not so dependent upon credit, nor is there usually the same need of a receiver to keep its plant in operation. The present case illustrates this. No receiver was ever prayed for or appointed. The plant was kept in operation by the company until the trustee under the mortgages sold it, and it is now being run by another company.

It is not necessary, however, to elaborate this distinction, or to decide that under no circumstances could the doctrine of preferential claims be applied to a gas company. It is enough to say that the bill does not show a state of facts which would justify the application of the doctrine, even if the defendant below were a railroad company; for, to displace the lien of mortgagees and charge the corpus with an operating expense as a preferential claim, something more must be shown than that the supplies were used to run the road and are unpaid. There must be a receivership, the supplies must have been furnished within a limited time (in this circuit six months) before the receivership, and it must appear there was a diversion of the current earnings for the benefit of the mortgagees, either by the payment of interest or the betterment of the mortgaged property.

In the leading case of Fosdick v. Schall there was an application for a receivership by the mortgagees. It was held that this put it within the discretion of the court to direct the receiver to pay out of the income of the receivership certain preferential claims which ought to have been paid out of the current earnings of the company, but the court said (page 253, 99 U. S., 25 L. Ed. 339):

"The mortgagee has his strict rights which he may enforce in the ordinary way. If he asks no favors, he need grant none. But if he calls upon a court of chancery to put forth its extraordinary powers and grant him purely equitable relief, he may with propriety be required to submit to the operation of a rule which always applies in such cases, and do equity in order to get equity."

In Miltenberger v. Logansport Railway Company, 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117, the necessity of authorizing a receiver to pay pre-existing debts of certain classes out of the earnings of the receivership, or even the corpus of the property, is explained, yet the discretion to do so, it is said (page 311, 106 U. S., page 162, 1 Sup. Ct., 27 L. Ed. 117), "should be exercised with very great care." The claims of operatives, of supply men, and of connecting lines for freight and ticket balances for a limited time before the receivership, must be paid to preserve the credit needed to enable the receiver to keep the road in effective operation. These considerations, says the court (page 312, 106 U. S., page 163, 1 Sup. Ct., 27 L. Ed. 117), "may well place

such payments in the category of payments to preserve the mortgaged property in a large sense, by maintaining the good will and integrity of the enterprise." These and other cases are reviewed, and the doctrine in question discussed, in the opinion delivered by Mr. Justice Harlan in the recent case of Southern Railway Company v. Carnegie Steel Company, 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458.

In the case of Kneeland v. American Loan Company, 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379 (approved in Thomas v. Western Car Company, 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663, and V. & A. Coal Company v. Central Railroad Company, 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1068), attention is called to the necessity of a court of equity confining itself within very restricted limits in the application of the doctrine of Fosdick v. Schall, and the court, speaking by Mr. Justice Brewer, uses the following language (136 U. S. 97, 10 Sup. Ct. 953, 34 L. Ed. 379):

"The appointment of a receiver vests in the court no absolute control over the property and no general authority to displace vested contract liens. One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens."

The limited application of the doctrine of Fosdick v. Schall, thus adverted to by the Supreme Court, has always obtained in this circuit. The doctrine has never been applied except in the case of a receivership, and only where "the current income, either before or after the receivership, has been diverted to the benefit of the displaced mortgage" (International Trust Company v. Brick & Contracting Company, 95 Fed. 850, 37 C. C. A. 396, 406), and "almost universally" has been restricted to preferential claims accruing within six months prior to the receivership (Central Trust Company v. Railroad Company, 80 Fed. 629, 26 C. C. A. 30).

The complainant below sold the gas company coal and coke, which was used in making gas, and failed to collect the judgment on the note and account for these supplies, because of the outstanding mortgages. The first of this coal and coke was furnished in May, 1892, and the last in August, 1893. The judgment by confession in a state court was taken in January, 1894, and this bill filed in April, 1894. Twenty months had elapsed after the first item fell due, and five months after the last, before the judgment by confession was taken. No receivership existed when the bill below was filed, and none has ever been created. No diversion of the current earnings is charged to have occurred within the time when these operating expenses accrued. There is only the vague assertion, on information and belief, that within twelve or eighteen months before the bill was filed there had been a diversion, without giving dates or amounts.

If this were a claim against a railroad company, no facts are shown which would justify the court below in displacing the lien of the mort-

gagees for the purpose of paying it. Nor has any reason been suggested which would justify the enlargement of the doctrine of preferential claims so as to cover this one. The mortgagees asked no favors of the court, but stood upon their rights as lienholders. While the coke and coal were used to run the plant, it does not appear that without the credit extended in furnishing these supplies the plant would have shut down to the inconvenience of the public and the detriment of the mortgaged property. The complainant below stopped supplying coal and coke in August, 1893, but the plant did not shut down, nor was it necessary to apply for a receiver with authority to pay this and similar claims, in order to keep it "a going concern," and thus preserve the integrity of the mortgage security. The Memphis Gaslight Company kept on running the plant until it was sold by the trustee under the mortgages, and since then it has been operated by its successor.

The judgment of the Circuit Court is affirmed.