## GROTON BRIDGE & MFG. CO. v. CLARK PRESSED BRICK CO.

(Circuit Court, E. D. Arkansas, W. D. November 20, 1903.)

### No. 5,195.

1. JUDGMENT—CORRECTION OF RECORD—NUNC PRO TUNC ORDER—NOTICE—COLLATERAL ATTACK.

Where the trial court of its own knowledge made a nunc pro tunc order correcting the record of a judgment after the term, the fact that such order was made without notice to the defendant did not render the judgment as corrected subject to collateral attack.

2. SAME—COUNTERCLAIM—DISMISSAL—NONAPPEARANCE—JURISDICTION.

Where a counterclaim was filed in an action on a contract, to which plaintiff replied, and the court had jurisdiction both of the parties and of the subject-matter, the fact that defendant did not appear at the trial did not deprive the court of jurisdiction to render judgment on the merits dismissing the counterclaim.

3. SAME—PRESUMPTIONS—RES JUDICATA.

Where, in an action on contract, defendant pleaded a counterclaim, to which plaintiff replied by plea in abatement, alleging another suit pending between the same parties in the federal court on the counterclaim, which plea was clearly invalid, and on the trial defendant failed to appear, whereupon evidence was introduced by plaintiff to rebut the merits of the counterclaim, but no evidence was given to sustain the plea in abatement, a judgment dismissing the counterclaim would not be presumed to have been based on the plea of abatement, but was on the merits, and therefore was res adjudicata.

The plaintiff seeks to recover in this action damages alleged to have been sustained by it by reason of the breach of a contract entered into between it and the defendant for the sale and delivery of a lot of brick. Among the defenses set up by the answer is a plea of former adjudication. A trial by jury having been waived by the parties by proper stipulation in writing, the court finds the facts as follows:

That after the contract for the sale and purchase of the brick had been entered into between the parties, as set out in the complaint, the defendant in this action, who will be referred to as the Brick Company, instituted a suit in the circuit court of Hot Springs county, state of Arkansas, which is a superior court of record of general jurisdiction, against the plaintiff in this action, who will be referred to in this opinion as the Bridge Company, to recover a balance alleged to be due it for brick sold and delivered under the contract which is the basis of this action. In that suit the Bridge Company entered its appearance and filed an answer in the nature of a counterclaim, in which it practically admitted the allegations in the complaint of the Brick Company, but set up as a counterclaim the breach of the contract, based upon the same facts now set up by it in this action, and claimed damages therefor, as it does in this proceeding. To this counterclaim a reply was filed by the Brick Company, denying the breach alleged, and also in a separate paragraph pleaded in abatement the pendency in the federal court of a suit instituted by the Bridge Company against it upon the same cause of action and seeking the same relief.

When the action was reached for trial at the August term, 1899, of that court, judgment was rendered in favor of the Brick Company for the full amount claimed by it in its complaint, and nothing was allowed to the Bridge Company on its counterclaim. The record of the judgment as originally entered in that cause at that term, as far as material to the determination of this cause, is as follows:

"On this day, this cause coming on to be tried, comes the plaintiff by its attorney, and the defendant is three times called, and comes not, whereupon this cause is submitted to the court on the complaint of the plaintiff, the affi-

davit for attachment, the answer of the defendant heretofore filed, and written and oral evidence introduced in open court, and the court, being well and sufficiently advised as to what judgment to render herein, finds the issues of law and of fact for the plaintiff, and finds the following facts: First, that the defendant company is indebted to the plaintiff in the sum of $438.27, with interest on $351.27 of said sum from the 10th day of November, 1898, at six per cent. per annum, and with interest on $87 of said sum from the 1st day of December, 1898, at six per cent. per annum; second, that the defendant company is a nonresident of the state of Arkansas. It is therefore considered and adjudged by the court that the plaintiff have and recover of and from the defendant the sum of $456.85," etc.

At the next term of that court, on February 10, 1900, this record was amended by an order made by the court to be entered nunc pro tunc. This order is as follows:

"On this day comes the plaintiff, and suggests to the court a diminution of the record in this action, and it being within the knowledge of this court that this cause was on the 17th day of August, 1899, submitted to the court on the complaint of plaintiff, the answer of the defendant, and the reply of the plaintiff, and written and oral evidence, and that the record of the judgment fails to mention the reply as one of the pleadings on which the case was submitted, it is by the court ordered that the record of the trial and judgment of this action made and entered on the 17th day of August, 1899, as appears on page 43, Record B, of the records of this court, be amended by interlineation so as to show that the case was submitted on the reply of the plaintiff to defendant's answer, among other pleadings, and the amendment is accordingly made."

The original record of the judgment was, in accordance with this order of the court, interlined. This nunc pro tunc order or amendment of the record was made by the court without notice to the Bridge Company and without its knowledge. This action is between the same parties, and the cause thereof is the same as that which was set up by the Bridge Company in its answer and counterclaim in the suit determined in the circuit court of Hot Springs county. No evidence was introduced at that trial by the Brick Company to sustain its plea of abatement, but it did introduce evidence to disprove the allegations in the counterclaim.

Rose & Coleman and Rose, Hemingway & Rose, for plaintiff.
W. L. & W. J. Terry and N. P. Richmond, for defendant.

TRIEBER, District Judge (after stating the facts as above). It is urged by counsel for the Bridge Company that the judgment of the circuit court of Hot Springs county, which is pleaded by the defendant as res adjudicata, ought not to have that effect, upon the following grounds: First, that the nunc pro tunc order or amendment of the original judgment made at the February term, 1900, having been made without notice after the term at which the judgment was entered had expired, was an absolute nullity, that court having lost jurisdiction over the parties as well as the subject-matter; second, as the record shows that the Bridge Company, the counterclaimant in that action, did not appear at the trial and offered no proofs in support of its counterclaim, it was equivalent to a voluntary dismissal of its counterclaim, and the court was without jurisdiction to pass upon it except to dismiss it for want of prosecution; third, that as the reply of the Brick Company to the Bridge Company's counterclaim set up two distinct defenses, first, a denial of the counterclaim, and, second, a plea in abatement that another action was then pending for the same matters and between the same parties in the federal court, and the record failing to show upon which of the pleas the court rendered

its judgment, the presumption should be that the court sustained the plea in abatement, which would not be a bar to the present action.

That courts of record possess the power to correct or amend their records after the expiration of the term, in order to make them speak the truth, is too well settled to require any citation of authorities. Undoubtedly this power should be discreetly and cautiously exercised; otherwise great mischief might result. That notice thereof should be given to the party affected thereby seems but plain justice, otherwise this power might be the means of falsifying instead of correcting judicial records.

Learned counsel for both parties have furnished the court with long lists of citations on the question whether such a correction without notice is merely error to be corrected only on appeal, or is absolutely void, the court having acted either without or in excess of its jurisdiction, and thus subjecting its action to collateral attack.

The authorities are anything but harmonious on that question, but the view taken by the court in this action makes it unnecessary to determine it. The record entry shows that the judgment was amended because "it being within the knowledge of this court that this case was on the 17th day of August, 1899, submitted to the court on the complaint of plaintiff, the answer of the defendant and the reply of the plaintiff," etc. The importance of this amendment will be apparent by reference to the fact that, under the code of practice governing courts in this state, no reply can be filed to an answer unless the answer pleads a set-off or counterclaim. Section 5732, Sand. & H. Dig., is as follows: "There shall be no reply, except upon the allegation of a counterclaim or set-off in the answer." While there is some conflict among the authorities whether even an amendment made upon the court's own knowledge can be made without notice, neither the learned counsel for the plaintiff nor the court have been able to find a single authority which holds that such an amendment made by the court from its own knowledge can be attacked in a collateral proceeding.

In re Wight, 134 U. S. 136, 10 Sup. Ct. 487, 33 L. Ed. 865, the petitioner applied to the circuit court for a writ of habeas corpus, claiming that he was illegally deprived of his liberty by the keeper of the Detroit house of correction. From the return made by the keeper of the prison it appeared that he held the petitioner under a judgment of conviction of the United States District Court for that district. Upon the hearing the records of the district court were introduced, and they showed that the case had been transferred by that court to the Circuit Court, but there was no order of record of a remand from the Circuit to the District court. The Circuit Court had, in fact, made such an order, but the clerk had failed to enter it, which fact was within the recollection of the judges. Thereupon the Circuit Court, of its own motion, based upon its recollection of the fact of the making of said order remitting said cause into the District Court, entered an order nunc pro tunc to that effect. Upon appeal to the Supreme Court this order was sustained as a proper exercise of the power of the court. That the Supreme Court gave the question most careful consideration is shown by the following excerpt from the opinion:

"Our first impression was that whatever might be the powers of courts in this regard over their records during the term in which the transactions are supposed to have occurred, the record of which, or failure to make any record of which, is the subject of amendment, yet when it was attempted to do this after the adjournment, and at a subsequent term of the court, the powers of the court in making such changes in the records of the proceedings were limited to those in which there remained written memoranda of some kind in the case and among the files of the court by which the record could be amended if erroneous, or the proper entry could be supplied if one had been omitted; and especially that in criminal procedure this power to make such entries at the subsequent term of the court of what had transpired at the former term as would establish the authority of the court to pass a sentence of fine or imprisonment either did not exist at all, or, if it did, was limited to cases in which some written evidence of what was done remained in the papers connected with the case. We are satisfied, however, upon an examination of the authorities, that this restriction upon the power of the court does not exist."

After citing from Bishop on Criminal Proceedings, the court proceeded:

"The present case comes within the clause of this section which declares the power of the court to make nunc pro tunc entries to supply some omission in the record of what was done at the time of the proceeding."

In Portis v. Talbot, 33 Ark. 218, the clerk of the Supreme Court in entering a judgment had made a mistake, and the court in a collateral proceeding held that, it appearing that there was a mistake, it would make the correction of its own motion by nunc pro tunc entry although the term had elapsed. Lewis v. Ross, 37 Me. 230, 59 Am. Dec. 49.

In Odell v. Reynolds, 17 C. C. A. 317, 322, 70 Fed. 656, 660, Judge Severens, in delivering the opinion of the Circuit Court of Appeals for the Seventh Circuit, in relation to such an order made by a state court, said:

"The question of the necessity of notice may depend upon the source from which the evidence comes upon which the action is to be taken. If it is the recollection of the court, it is doubtful whether notice is required, for the reason that it is not open to contest. At all events, it would seem, upon the authorities, that corrections of the record made by the court upon its own recollection would not be collaterally assailable, though made without notice."

It might well be asked, of what benefit would notice be to a party if the order is made upon the personal recollection of the trial judge, and for this reason is not open to contest? But, without determining that question, I hold that, even if it was error to make the amendment without notice, it could only be corrected by appeal, and does not subject the action of a superior court to collateral attack.

Does the fact that the record shows that the counterclaimant did not appear at the trial and offered no evidence in support of its counterclaim deprive the court of jurisdiction to pass upon it? If it does, and the court determines the issues raised by the counterclaim and reply, its action is coram non judice, and may be attacked collaterally. It is well settled that, if a court has jurisdiction of the subject-matter and the parties, its judgment, no matter how erroneous or irregular, is conclusive in all collateral proceedings unless it exceeded its jurisdiction. This is elementary, and requires no citation of authorities.

It may be conceded, as claimed by counsel for plaintiff, that when a

plaintiff fails to appear at the trial, and the counterclaimant is, so far as his counterclaim is concerned, a plaintiff, the proper practice is for the court to dismiss the action or counterclaim, and that it is error to render judgment against the party, and yet such error may not make the action of the court a nullity. The failure to offer evidence in support of a counterclaim or set-off which is properly pleaded, and on which issue has been taken, does not prevent the judgment from being pleaded as res adjudicata. Eastmere v. Laws, 7 Dowl. 431, is a leading English case directly in point, and has been followed by most of the American courts. Newby v. Caldwell, 54 Iowa, 102, 6 N. W. 154; Wright v. Miller, 147 N. Y. 362, 41 N. E. 698; Casey v. Cooper, 99 N. C. 395, 6 S. E. 653.

The filing of the answer and counterclaim undoubtedly gave the court jurisdiction over the person. The allegations in the counterclaim show that the court had jurisdiction of the subject-matter. The only ground, then, upon which the action of the court in rendering a judgment can be assailed, is that the failure of the defendant to appear and offer proof in support of the counterclaim deprived the court of the jurisdiction which it had once lawfully obtained.

Counsel for plaintiff have referred the court to a long list of authorities which they claim sustain their contention; but a careful examination of these authorities shows that, with the exception of Burwell v. Knight, 51 Barb. 257, they have no application to the facts as they appear in the case at bar. Burwell v. Knight, although in point, is in direct conflict with the decision of the same court in Foster v. Milliner, 50 Barb. 385, where the court held:

"Where the record in the former suit shows that neither a counterclaim nor matter set up by way of recoupment in that suit were litigated therein, as the defendant did not appear at the trial, but suffered a judgment to be taken against him by default on the plaintiff's evidence, this will not prevent a plea of res adjudicata. The matter being directly in issue by the pleadings, the neglect of the defendant to appear does not change the rule."

This case is not even referred to by the court in Burwell v. Knight. Since then the Court of Appeals of the state of New York has had the same question before it, and the conclusions reached were the same as those in Foster v. Milliner. Collins v. Bennett, 46 N. Y. 490; Patrick v. Shaffer, 94 N. Y. 423.

Anderson v. Rogge, 28 S. W. 106 (Tex. Civ. App.), cited by counsel, contains a dictum favorable to their contention; but what was said by the learned judge who delivered the opinion is merely an expression of his own views of what the law is on that question, for, as shown by the report, the former judgment was not pleaded, and the court held that it was not before it.

Central Trust Company v. Clark, 26 C. C. A. 397, 81 Fed. 272, is not in point. The facts in that case were that the Midway Steel Company had instituted suit in a court in the state of New York against the street railway company, which was then in the hands of a receiver appointed by the United States Circuit Court for the district of Colorado, without making the receiver a party thereto. The railway company filed a counterclaim arising out of the same contract, but it appeared from the record of the New York court that

the action was sent to a referee for trial, and the referee reported that the railway company had produced no proofs in support of its counterclaim, for which reason no finding was made thereon by him. This report of the referee was practically a dismissal of the counterclaim. The judgment of the New York court was against the railway company alone, and Judge Thayer in his opinion said:

"It is manifest, therefore, that there has been no actual trial of the issue touching the alleged breach of contract, and the question to be decided is whether the trial court should have granted the appellants a hearing upon that issue."

The case came before the federal court in the following manner: The Midway Steel Company, after the recovery of the judgment in the New York court, presented its claim to the Circuit Court in Colorado, on the equity side of which the receivership of the street railway was pending, asking not only for an allowance of the claim against the estate, but also that the claim be declared as having a preferential character and equitably entitled to be paid in advance of the claims of the mortgage bondholders, upon whose bill the receiver had been appointed. The learned judge, after disposing of the effect of the action of the referee in New York, said:

"We rest our conclusion on this point not altogether on the ground last indicated, but upon the principle that one who seeks relief purely upon equitable grounds should himself do what is equitable. In the present proceeding the intervener interposes a claim against the proceeds of the mortgaged property, and insists that it shall be paid prior to the mortgage indebtedness, not, however, because he has a lien upon the mortgaged property such as a court of law would recognize and enforce, but because of the circumstances under which certain machinery was supplied to the railway company. The intervener himself had no standing in court to maintain his claim to a preference without going behind the New York judgment, and showing the origin and nature of the demand on which the judgment rests. When, therefore, he invites an investigation of those questions for the purpose of establishing an equitable right to which the judgment alone would not entitle him, we think that the mortgage bondholders should be permitted to show, if they can, that they were not benefited to the extent of the full value of the machinery which was supplied to the railway company, but that by reason of the failure to deliver the same within the contract period the company sustained some loss."

While it might have been error on the part of the Hot Springs county circuit court to proceed with the trial of the counterclaim in the absence of the counterclaimant, its action was neither without jurisdiction of the persons or subject-matter, nor in excess of the jurisdiction which it had obtained upon the filing of the counterclaim and the reply thereto, and therefore cannot be corrected by this court in a collateral proceeding, or disregarded as being a nullity.

Does the fact that the reply set up, in addition to the denials of the allegations of the counterclaim, a plea in abatement that a suit for the same cause of action as that set up by the bridge company in its counterclaim was then pending between the same parties in the federal court, raise the presumption that the judgment was upon that issue only, and not the other raised by the reply? That plea was clearly bad, and, if this court is to act on presumptions, is it not more reasonable for it to indulge in the presumption that that court,

a court of co-ordinate jurisdiction and co-equal dignity, committed no error, rather than it did? If its judgment was based on the plea in abatement, the judgment would have been a dismissal of the counterclaim, and not a final judgment, for the plea did not go to the merits of the case, but only to the right to maintain the suit. The fact that there is such a plea filed with an answer, in addition to a denial of the other allegations in the complaint, creates no presumption that the judgment of the court was based upon one plea rather than another. In 420 Mining Company v. Bullion Mining Company, 3 Sawy. 634, 647, Fed. Cas. No. 4,989, where a like contention was made, Judge Sawyer says:

"All defenses, whether dilatory or to the merits, may be set up in the same answer and tried together. If it is admissible to set up several defenses in one answer it must be competent for the court to try and determine them all. The law neither enjoins nor permits a vain thing to be done, but it would be doing a vain thing to set up a defense which could not be tried when set up. It may not be necessary to dispose of all the issues, and sometimes, doubtless, all are not determined; but it is certainly admissible to do so, and if properly tried and determined I can see no good reason for not holding every issue so properly in fact tried and determined to be finally and conclusively determined. Suppose the judge should be entirely satisfied that the defendant's title is good, and so find distinctly on that issue, without passing at all upon the issue as to whether defendant was in possession at the commencement of the action, either because the evidence on that point left it in doubt, or because, for any reason, he preferred to rest his judgment on the defendant's title on the real merits of the case; can there be any doubt that the matter would be res adjudicata? If he is authorized to find the issue without passing upon the other issue, and his determination would be res adjudicata, he is certainly authorized to pass upon it in connection with the other issue, and if so determined it must have the same force as a determination in the other mode."

In Sheldon v. Edwards, 35 N. Y. 279, 289, the court say:

"There seems no sound reason why a judgment on an issue in bar, though it also embrace an issue in abatement, should not conclude the parties in all future controversies. If it do not, the provisions of the Code and the decisions of this court allowing such issues to be made and tried at the same time are of no force. Of what benefit to either party to try an issue, if the finding is of no consequence and if the judgment of no effect? The law presumes it was properly tried, that all the facts bearing upon the issue were fully and fairly presented. Why, then, should it be retried? * * * Assuming that the case stands the same as if an answer of matter in abatement as well as in bar had been interposed, the result is the same as if the case were disposed of on the merits and judgment entered accordingly. Here the fact affirmatively appears that the plaintiff was defeated upon the merits of a judgment entered upon the merits; not a word of nonsuit or dismissal appears in the record."

This decision is peculiarly applicable to this case, as the Code of Practice of this state, like that of New York, requires all defenses, whether going to the merits or in abatement, to be included in the answer. The statute provides:

"The defendant may set forth in his answer as many grounds of defense, counterclaim and set-off, whether legal or equitable, as he shall have." Section 5722, Sand. & H. Dig.

But, regardless of any presumptions, it appears from the oral evidence of Mr. Berger, who was the attorney for the Brick Company at the trial in the Hot Springs circuit court, that it introduced no

evidence to sustain the plea in abatement, but did introduce evidence on the issues raised by the counterclaim as they went to the Brick Company's right to recover.

Upon the facts found, the court is of the opinion that the plea of res adjudicata is good and a bar to plaintiff's right of maintaining this action. Judgment will accordingly be entered in favor of the defendant.